IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Terry D. Webb, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>Leroy Cartledge, Warden of )<br>McCormick Correctional Institution, )<br>)<br>Respondent. )<br>_____) | Civil Action No.8:09-2057-CMC-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

The Petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. # 14.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on July 30, 2009.[1] An Amended Petition was filed on November 2, 2009. (Dkt. # 10.) On December 23, 2009, the Respondent moved for summary judgment. (Dkt. # 14.) By order filed December 28, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. # 16.) On February 1, 2010, the Petitioner filed his response in opposition to the Respondent's Summary Judgment Motion. (Dkt. # 17.)

---

[1] Although the filing date does not appear to be an issue in this case, there is no evidence in the record regarding the date the prison authorities received this habeas petition for forwarding to the Court. *See Houston v. Lack,* 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court). The undersigned is using the date the petition was signed as the filing date. (Pet.)

## I. PROCEDURAL HISTORY/FACTS

The petitioner is currently incarcerated at the McCormack Correctional Institution. In October 2003, the Petitioner was indicted for distribution of crack cocaine, 3rd offense. The Petitioner was represented by S. Paul Aaron, Esquire. (App. 2.) The Petitioner also had other pending charges: three 3rd offense distribution of crack cocaine charges, a 3rd offense trafficking crack cocaine charge, and a 3rd offense trafficking cocaine charge. (*See* Return Attach. # 6.)[2] On April 26, 2004, the Petitioner pled guilty to one count of distribution of crack cocaine, 2nd offense, before the Honorable Alexander Macaulay. (App. 2-23.) The guilty plea was a negotiated plea and sentence. (App. 3.) The State and the Petitioner agreed if the Petitioner plead guilty to one count of distribution of crack cocaine, 2nd offense, he would receive a twenty-five year sentence, his other remaining drug charges would be dismissed, and his pregnant girlfriend, who also had pending drug charges, would be prosecuted for a lesser offense. (App. 13; 20.) Judge Macaulay accepted the negotiated sentence, and sentenced the Petitioner to twenty-five years to run concurrent with the Petitioner's sentences on the federal charges. (App. 22-23.)[3] The State then dismissed the other drug charges.

The Petitioner filed a timely direct appeal and was represented in the appeal by Tara S. Taggart, Esquire. Taggart filed a motion to be relieved as counsel and an *Anders* brief raising the following issue: "Whether the court erred in accepting appellant's guilty plea

---

[2] At the guilty plea, the Solicitor stated he only had two other pending distribution charges. (App. 13.) During the PCR hearing, there is also a reference to the Petitioner having been initially charged with eight different charges. (App. 43.)

[3] It is unclear in the record what federal charges were involved. The Solicitor stated at the guilty plea that the Petitioner was indicted for the federal charge of distribution of crack cocaine, but she was not aware of what charge he actually pled to. (App. 17.)

2

without conforming to the mandates of *Boykin v. Alabama*?"[4] (Return Attach. # 2.) On December 17, 2004, the Petitioner filed a Pro Se Response to the *Anders* brief raising the following issues: 1) whether his guilty plea was knowing and voluntary; 2) trial court error; 3) subject matter jurisdiction; and 4) ineffective assistance of counsel. (Return Attach. # 3.) On April 20, 2005, the South Carolina Court of Appeals affirmed the Petitioner's conviction and sentence, dismissed the appeal, and granted appellate counsel's request to be relieved in an unpublished opinion, *State v. Webb*, Op. No. 2005-UP-286 (Ct. App. filed April 20, 2005). (Return Attach. # 4.) On May 23, 2005, the Court sent down its remittitur. (Return Attach. # 6.)

On June 13, 2005, the Petitioner filed an application for Post-Conviction Relief ("PCR") raising the following grounds for relief and supporting facts, quoted verbatim:

> 1) Ineffective assistance of counsel. Counsel informed defendant he would get life sentence when charges do not carry life sentence.
>
> 2) Plea not voluntarily made. Attorney nor judge informed plaintiff sentence was 85%.

(App. 27.)

On May 21, 2007, an evidentiary hearing was held before the Honorable J.C. Nicholson, Jr. (App. 37-80.) The Petitioner was represented by Charles Hughes, Esquire. (App. 37.) On July 10, 2007, Judge Nicholson filed an order denying the Petitioner PCR. (App. 82-88.) The Petitioner appealed the denial of PCR. The Petitioner was represented on this appeal by Assistant Appellate Defender Robert M. Pachak. Pachak filed a petition to be relieved as counsel and a *Johnson* Petition, raising only one issue: "Whether defense counsel was ineffective in incorrectly advising petitioner about parole eligibility?" (Return Attach. # 7.)

---

[4]395 U.S. 238 (1969).

The Petitioner also filed a pro se *Johnson* Petition raising the following issue, quoted verbatim:

> Whether the Petitioner's plea of guilty was not knowingly and voluntarily made because his guilty plea was induced by the Solicitor's threat of life without parole, which rendered the plea hearing attorney ineffective because he never informed the Petitioner that this was not possible in light of the Petitioner's prior criminal history?

The case was transferred to the South Carolina Court of Appeals. (Return Attach. # 9.) On April 24, 2009, the South Carolina Court of Appeals denied the petition for writ of certiorari and granted counsel's request to withdraw. (Return Attach. # 10.) On May 14, 2009, the court issued its remittitur. (Return Attach. # 11.)

On July 30, 2009, the Petitioner filed this federal habeas petition raising the following grounds for relief, quoted verbatim:

> **Ground One:** Unknowing and Involuntarily entered Guilty Plea
> **Supporting Facts:** At the time of Petitioner's guilty plea hearing, he was unaware of the fact that the Solicitor couldn't seek a Life sentence, due to Petitioner's prior criminal history, under § 17-25-45, S.C. Code of Laws, because Plea Counsel erroneously informed him that the Solicitor could seek a Life sentence; thus, Petitioner entered a guilty plea out of the attempt to avoid a Life sentence (involuntary) when he didn't know it was actually impossible.
>
> **Ground Two:** Ineffective Assistance of Counsel
> **Supporting Facts:** Plea hearing counsel gave Petitioner erroneous advice in that the Solicitor could seek a Life sentence on current charge when law (under § 17-25-45, S.C. Code of Laws) does not, in fact, support Life sentence against Petitioner; off of Counsel's advice Petitioner only pled guilty to dodge what was believed to be an actual situation of where he would receive a Life sentence, and absent Counsel's advice, Petitioner would not have pled guilty.
>
> **Ground Three:** Solicitor Misconduct
> **Supporting Facts:** The Solicitor committed Misconduct by threatening to seek a Life sentence (under § 17-25-45, S.C. Code of Laws)(when that statutory authority does not support any application against Petitioner) and inducing an unknowing and involuntary guilty plea from Petitioner through Counsel.

4

(Hab. Pet. at 6-9.)

## II. APPLICABLE LAW

### A. Summary Judgment Standard

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position

5

is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**B. HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

6

**C. EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

I. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

ii. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from

8

raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

iii. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue,

9

he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

     iv. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

### III. **DISCUSSION**

**Grounds One and Two**

In Ground One, the Petitioner contends his guilty plea was not knowing and involuntary. The Petitioner argues that when he pled guilty, he was pleading to avoid a life sentence without the possibility of parole ("LWOP"). He alleges his plea counsel erroneously informed him that the Solicitor could seek a LWOP sentence and he was unaware that the Solicitor could not seek a LWOP sentence. In Ground Two, the Petitioner specifically alleges that his plea counsel was ineffective for advising him to pled guilty when he was not subject to a LWOP sentence.

On direct appeal, the Petitioner contended that his guilty plea did not comply with the mandates set forth in *Boykin v. Alabama,* 395 U.S. 238 (1969). *Boykin* requires that guilty pleas must be knowingly, voluntarily, and intelligently pled. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant.' " *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (*quoting North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). "[W]hen a defendant is represented by counsel when making his guilty plea, that plea is strongly presumed to be valid in subsequent habeas proceedings." *Sargent v. Waters*, 71 F.3d 158 (4th Cir.1995) (*citing U.S. v. Custis*, 988 F.2d 1355, 1363 (4th Cir.1993)).

On PCR, the Petitioner raised the issue of whether his plea counsel was ineffective for misadvising the Petitioner that he was subject to a LWOP sentence. Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." *Tollett v. Henderson,* 411 U.S.

258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the *Strickland* test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. The prejudice prong of the *Strickland* test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59.

At the guilty plea, among other things, the court informed the Petitioner of his right to a jury trial and that he was facing a maximum sentence of 25 years and a $50,000 fine. (App. 10.) The court also informed the Petitioner that while he may have discussed parole with other people or his attorney, no one could tell the Petitioner when, if ever, he would be eligible for parole and that he should assume he would have to serve the entire sentence. (App. 16.) The Petitioner admitted he had "sold dope to an undercover informant . . ." (App. 11.) The Solicitor stated that there was a videotape of the buy and it was the "best video [she had] ever seen." (App. 16.) The Solicitor stated that the tape clearly depicted the Petitioner and he and the informant engaged in an extensive conversation." *Id.* The Solicitor recited that the Petitioner also had pending additional drug charges: two trafficking crack cocaine charges and two distribution of crack cocaine charges which would be dropped in exchange for a guilty plea. (App. 13.) Finally, the Solicitor stated that the Petitioner's girlfriend had a pending trafficking charge for allowing the Petitioner to deal drugs out of her house but the State would allow her to pled guilty to possession with a

probationary sentence. (App. 20.) The Petitioner stated that he was agreeing to take the 25-year sentence because he was "going to take the weight for everything because [his girlfriend] had nothing to do with it." (App. 21.)

At the PCR hearing, the Petitioner testified that his plea counsel incorrectly informed him that the state could seek a LWOP sentence. The Petitioner testified that had he known the State could not seek such a sentence, he would not have pled guilty. Further, the Petitioner testified that the state coerced him to pled guilty by threatening to prosecute his girlfriend. The Petitioner also testified that his plea counsel told him he would have to serve 65% of the sentence, when he actually must serve at least 85%.

At the PCR hearing, plea counsel testified that he discussed with the Petitioner that the Solicitor planned to seek a LWOP sentence if the Petitioner went to trial, but he could not recollect any specific advice he may have given to the Petitioner regarding the LWOP sentence. (App. 70.) Further, plea counsel testified that he did not recall ever telling the Petitioner that he would have to serve 65% of his sentence rather than 85%. *Id.* In addition, he testified that he believed the plea judge advised the Petitioner that if parole had been discussed, that discussion should be ignored. (App. 71.)

The PCR court found that the Petitioner's testimony was not credible, but that plea counsel's testimony was credible. (App.86.) The PCR Court further found based on the evidence presented and the record before it, plea counsel's belief that the Petitioner would likely have been found guilty had he gone to trial was reasonable. *Id.* The PCR Court then determined that even if counsel's performance was deficient, the Petitioner was not prejudiced because there was overwhelming evidence of the Petitioner's guilt. *Id.* The PCR Court noted that there was a videotape which showed the Petitioner and a confidential informant engaged in a drug transaction. *Id.* The PCR Court further found that there was no evidence that plea counsel incorrectly advised the Petitioner that he would have to serve

13

only 65% of his sentence. (App. 87.) The PCR also noted that the plea transcript reflects that the plea court informed the Petitioner that he should assume he would have to serve his full sentence and that no one could tell him if and when he would be parole eligible. *Id*.

First, the undersigned notes that the PCR Court found the Petitioner's testimony was not credible, and the testimony of plea counsel was credible and these findings are entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (holding "for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."). At the guilty plea, as noted above, the Petitioner did not mention his decision to pled was tied to the Solicitor's reference to a LWOP sentence. He stated that he was pleading because of the deal offered for his girlfriend and he admitted he was in fact guilty.

A plea agreement made through negotiation frequently benefits the defendant by limiting his exposure. *Brady v. United States,* 397 U.S. 742 (1970). Furthermore, a promise of leniency for a third party is a legitimate tool of plea bargaining, and a guilty plea made to obtain lenient treatment for a third party is not invalid as long as it is otherwise shown to be voluntary. *Harman v. Mohn*, 683 F.2d 834, 838 (4th Cir. 1982). However, with this kind of plea arrangement, special care must be taken to determine voluntariness. *United States v. Morrow,* 914 F.2d 608 (4th Cir. 1990). Prosecutors must "exercise a high standard of good faith in negotiating such pleas and . . . courts accepting such pleas [should] examine them carefully to insure that the accused understands the plea agreement and the consequences not only to himself, but to such third person as may be affected by the plea bargain." *Harman*, 683 F.2d at 838.

The Respondent has calculated the potential sentence the Petitioner was facing on all charges to be 145 years without parole. (Resp't.'s Mem. Supp. Summ. J. Mot. at .) The Petitioner does not dispute this; rather he argues that the Respondent is overlooking the

contractual nature of guilty pleas and he alleges he was under duress because he was threatened with "harsh criminal prosecution" presumably because of her threat to seek a LWOP sentence. (Pet'r's Mem. Opp. Summ. J. Mot. at 5-6.) However, the Petitioner was threatened with a harsh sentence based upon the charges themselves, i.e. a potential sentence of 145 years without parole. Furthermore, as noted by the PCR Court, the evidence appears to have been very strong against the Petitioner. The Petitioner was recorded on a video camera selling crack cocaine to a confidential informant and the Petitioner does not dispute he sold the cocaine. Thus, even if counsel's performance was deficient, the Petitioner was not prejudiced because there was overwhelming evidence of the Petitioner's guilt.

Reviewing the record and in light of the PCR Court's credibility findings, it was not unreasonable for the PCR Court to find that the Petitioner failed to meet his burden of showing plea counsel was ineffective. The PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Ground Three**

In Ground Three, the Petitioner alleges that the Solicitor committed prosecutorial misconduct by threatening to seek a LWOP sentence when such a sentence was inapplicable and by inducing an unknowing and involuntary guilty plea from the Petitioner. The Respondent contends that this issues is procedurally barred.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. Further, he may present

15

only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court . . . that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." *Joseph v. Angelone*, 184 F.3d 320, 328 (4th Cir.1999) (internal quotes and citations omitted). A Petitioner must discuss "operative facts and the controlling legal principles." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.1997) (internal quotation marks omitted).

Although the Petitioner refers to prosecutorial misconduct in his PCR hearing (App. 51), he did not raise the issue as a separate claim in his application and the PCR court did not rule upon it. More importantly, the Petitioner did not raise this issue in his PCR appeal. The Petitioner's counsel raised the issue of whether trial counsel was ineffective in incorrectly advising petitioner about parole eligibility. (Return Attach. # 7.) Then, in his pro se *Johnson* petition, the Petitioner raised the issue of whether his guilty plea was knowingly and voluntarily "because his guilty plea was induced by the Solicitor's threat of life without parole, which rendered the plea hearing attorney ineffective because he never informed the Petitioner that this was not possible in light of the Petitioner's prior criminal history." (Return Attach. # 8.) The Petitioner raised an issue regarding the voluntariness of his plea and whether his plea counsel was ineffective. However, he did not squarely present a claim of prosecutorial misconduct in his PCR appeal. Therefore, this claim is procedurally defaulted.

As stated above, when petitioner has defaulted his claims in state court, habeas review of the claim is barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. at 750. Here, the Petitioner contends that he tried to amend his

16

PCR application and raise this issue, but his PCR counsel refused. (Pet'r's Mem. Opp. Summ. J. Mot. at 4.) However, ineffective PCR counsel cannot provide cause to excuse the default as the Petitioner does not have a constitutional right to effective assistance of PCR counsel. *Id*. at 752 (rejecting finding cause to excuse default on ineffective assistance of counsel where no constitutional guarantee of effective assistance existed); *Mackall v. Angelone,* 131 F.3d 442, 448 (4th Cir.1997) ("in order to constitute cause, attorney error must amount to constitutionally ineffective assistance of counsel and that this standard could not be satisfied in the absence of a constitutional right to counsel"). Accordingly, this claim is procedurally barred from habeas review.

In *Kornahrens v. Evatt,* 66 F.3d 1350 (4th Cir.1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See Karsten v. Kaiser Foundation Health Plan,* 36 F.3d 8, 11 (4th Cir.1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Accordingly, as this claim is procedurally barred, it should be dismissed.

## IV. **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 14) be GRANTED; and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

Bruce Howe Hendricks
United States Magistrate Judge

March 3, 2010
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).